UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELLEN J. SHOOK,

          Plaintiff,

    V.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

**REPORT AND RECOMMENDATION**

12-CV-185
(TJM/VEB)

---

## I. INTRODUCTION

In May of 2010, Plaintiff Ellen J. Shook applied for disability and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since February of 2008 due to physical impairments related to multiple sclerosis. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorney, Peter M. Margolius, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on May 11, 2010, alleging disability beginning on February 1, 2008. (T at 18, 107-112).[1] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 31, 2011, before ALJ Dale Black-Pennington. (T at 28). Plaintiff appeared with her attorney and testified. (T at 32-50).

On July 8, 2011, ALJ Black-Pennington issued a written decision finding that Plaintiff was not disabled and was therefore not entitled to benefits. (T at 15-27). The ALJ's decision became the Commissioner's final decision on December 1, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, through counsel, timely commenced this action on January 26, 2012. (Docket No. 1). The Commissioner interposed an Answer on March 22, 2012. (Docket No. 7). Plaintiff filed a supporting Brief on May 7, 2012. (Docket No. 12). The Commissioner filed a Brief in opposition on June 14, 2012. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

## III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

### 1.   Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008, and had not engaged in substantial gainful activity since February 1, 2008, the alleged onset date. (T at 20). The ALJ concluded that Plaintiff had the following impairment, as defined under the Act: multiple sclerosis. (T at 20).

However, the ALJ found that, between the alleged onset date and the date last insured, Plaintiff's impairment did not significantly limit her ability to perform basic work-related activities for 12 consecutive months and, as such, Plaintiff did not have a severe impairment. (T at 20-23).

Accordingly, the ALJ determined that Plaintiff was not disabled under the Social Security Act between the alleged onset date (February 1, 2008) and the date last insured (December 31, 2008) and was therefore not entitled to benefits. (T at 24). As noted above, the ALJ's decision became the Commissioner's final decision on December 1, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### 2. Plaintiff's Arguments

Plaintiff contends that the Commissioner's decision should be reversed. She offers two (2) principal arguments in support of this position. First, she argues that the ALJ erred by concluding that her multiple sclerosis was not a severe impairment. Second, Plaintiff asserts that the Appeals Council should have remanded the matter based on new evidence. This Court will address both arguments in turn.

#### a. Severity of Impairment

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to

6

render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ noted Plaintiff's diagnosis of multiple sclerosis, but concluded that the impairment did not significantly limit Plaintiff's ability to perform basic work activities during the relevant time period (i.e. February 1, 2008 - December 31, 2008). (T at 20). For the following reasons, this Court finds that the ALJ's decision is supported by substantial evidence and should therefore be sustained.

Plaintiff was seen by Dr. Bruce A. Beesley, her treating neurologist, only once during the relevant time period, on April 30, 2008. Dr. Beesley noted that Plaintiff had given birth to a baby boy about eight weeks prior to the visit and reported that Plaintiff was "doing great." (T at 158). Plaintiff denied any "weakness, clumsiness, sensory loss, monocular vision loss, diplopia or change in bowel or bladder habits." (T at 158). The only complaint noted was "occasional numbness along her left lip if she gets overtired." (T at 158). Dr. Beesley conducted a neurological examination and noted unremarkable findings, including normal muscle tone and strength. (T at 159-60). He described Plaintiff as "clinically stable" with respect to her multiple sclerosis. (T at 160).

Dr. Beesley's April 2008 findings were consistent with treatment notes from shortly before and after the relevant time period. For example, in September of 2007, Dr. Beesley noted that Plaintiff experienced "some occasional tingling over her left lip but other than that [had] no neurologic symptoms." (T at 161). Plaintiff complained of "marked fatigue" during

7

the first trimester of her pregnancy, but noted improvement. (T at 161). Plaintiff's muscle tone and strength were normal. (T at 162). Dr. Beesley described Plaintiff's multiple sclerosis as "quiescent." (T at 162).[4]

In January of 2009, Plaintiff reported "a number of minor issues," including numbness on the bottom of one toe (which was related to a vacation stay in an unheated house on the top of mountain); an episode of left arm weakness and numbness; a single, brief episode of experiencing a "spinning" feeling when rolling over; and slight difficulty lifting her left leg. (T at 155). The only symptom Dr. Beesley attributed to multiple sclerosis was left side weakness. (T at 157). Plaintiff's muscle tone was normal and her muscle strength was essentially normal (weakness of the left triceps and strength of flexion of the left knee were noted to be 4.9 out of 5). (T at 157). Dr. Beesley described Plaintiff's condition as "reasonably stable." (T at 157). He did not feel Plaintiff was "weak enough" to warrant steroid treatment and recommended that she continue with her current treatment with the medication Avonex. (T at 157).

The treatment notes of Dr. Samuel Merkhan, Plaintiff's treating internist, from the relevant time period also support the ALJ's decision. In April 2008, Plaintiff saw Dr. Merkhan with complaints of recurrent sinus symptoms. (T at 242). Dr. Merkhan diagnosed "recurrent sinusitis," but did not note any limitations. (T at 242). In May of 2008, Plaintiff saw Dr. Merkhan in follow-up to laparoscopic surgery and hernia repair. (T at 241). No limitations were noted. (T at 241). In a September 2008 treatment note, Dr. Merkhan reported that Plaintiff complained of "slight fatigue and . . . slight sensory symptoms

---

[4]"Quiescent" means "marked by inactivity or repose" or "causing no trouble or symptoms." *See* http://www.merriam-webster.com/dictionary/quiescent.

secondary to multiple sclerosis." (T at 240). Dr. Merkhan opined that Plaintiff could "continue current . . . activities." (T at 240).

The report of J. Bodner, a non-examining State Agency medical review consultant also supported the ALJ's non-severity finding. Dr. Bodner reviewed the medical records and opined that the only significant limitation during the relevant time period was a need to avoid excessive temperatures. (T at 211).

Plaintiff's activities of daily living also support the ALJ's assessment. Plaintiff testified that she can lift twenty-five (25) pounds, sit for "a few hours," and stand for approximately two hours. (T at 41). She performs household chores (e.g. cooking, laundry, cleaning, grocery shopping). (T at 43-44). She is the primary caregiver for her two young children. (T at 45-46). Although Plaintiff testified that she experienced significant left-sided weakness immediately following the February 2008 birth of her son (T at 36), this testimony was inconsistent with the contemporaneous medical record, as outlined above.

This Court is mindful of the evidence, cited by Plaintiff, documenting symptoms from outside the relevant time period. For example, in March of 2006 (nearly two years prior to the alleged onset date), Dr. Beesley indicated that Plaintiff had likely experienced a "mild exacerbation" of her multiple sclerosis, including vision problems and "tingling paresthesias on the right arm and leg," which had resolved. (T at 173, 175). In November of 2006, Dr. Beesley reported that Plaintiff's multiple sclerosis was "relatively stable," except for a "small exacerbation with remission with right optic neuritis." (T at 169). In May of 2009, Dr. Beesley indicated that Plaintiff's condition was "reasonably good," but she was experiencing left side weakness when fatigued. (T at 152). In November of 2009 (nearly a year after the date last insured), Dr. Beesley reported "intermittent heaviness and weakness in the left

lower extremity." (T at 149). In May of 2010, Dr. Beesley noted "progressive weakness" in Plaintiff's left leg and "increasing spasticity." (T at 145).

However, "[c]onflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

Moreover, the limited question presented is whether Plaintiff's condition was "severe," within the meaning of the Social Security Act, during the very limited period of time at issue (February 2008 - December 2008). For the reasons stated above, substantial evidence (including, in particular, treatment notes and clinical examinations by treating providers that occurred during the relevant time period) supports the ALJ's finding that the condition was not severe during that limited period and the Commissioner's decision should therefore be sustained.

### b. Appeals Council

The Appeals Council is required to consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F. Supp.2d 297, 302 (D.Conn.2009).

In the present case, Plaintiff provided the Appeals Council with a letter from Dr. Beesley, dated August 22, 2011. (T at 4, 267). The Appeals Council found that Dr. Beesley's letter did not provide a basis for changing the ALJ's decision. (T at 2). This Court finds that the Appeals Council's decision was in accord with applicable law and supported by substantial evidence.

Dr. Beesley's letter was written in August of 2011, more than two and a half years after the date last insured. Although Dr. Beesley reports significant work-related limitations, he is clearly offering an opinion as to Plaintiff's condition in August of 2011, not during the relevant time period. For example, Dr. Beesley states that "[a]t *this point in time*" Plaintiff has "functional limitation including decreased vision in the right eye, left-sided weakness in the arm and leg, decreased balance worse with fatigue and significant fatigue . . . ." (T at 267)(emphasis added). Dr. Beesely further opined that "[a]*t this point in time*," he did not

11

believed Plaintiff could "work a full workload due to the fatigue and . . . left-sided weakness." (T at 267)(emphasis added).

This Court is mindful that evidence cannot be disregard solely because it post-dates the relevant time period. Rather, information provided after the date last insured should be considered to the extent it sheds light on the Plaintiff's condition as of the relevant time period. See Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004). Here, however, the medical record from the period between February and December 2008, which includes contemporaneous treatment notes and clinical findings from Dr. Beesley, provides substantial evidence in support of the Commissioner's decision. Dr. Beesley's treatment notes and clinical findings from shortly before, during, and shortly after the relevant time period provide sufficient support for the ALJ's findings, for the reasons outlined above.

The August 2011 letter, which clearly expresses an opinion concerning Plaintiff's condition at that time, and which notes that "fluctuation" of symptoms is common in patients with multiple sclerosis (T at 267), does not materially affect the ALJ's analysis with regard to the relevant time period.

This Court does not doubt that Plaintiff was experiencing significant symptoms as of August 2011 and that her multiple sclerosis may have become disabling at some point. However, the narrow inquiry here is whether the Commissioner's conclusion with respect to the nature and extent of Plaintiff's impairment *during the relevant time period* was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In other words, the only issue this Court has the authority to consider is whether

12

substantial evidence supports the Commissioner's decision that Plaintiff was not disabled between the alleged onset date (February 1, 2008) and the date last insured (December 31, 2008).

To be eligible for disability insurance benefits, a claimant must be "insured for disability insurance benefits." 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); see also 20 C.F.R. §§ 404.130, 404.315(a) (1988).[5] Generally, if the claimant is otherwise eligible to receive disability insurance benefits and becomes disabled prior to their date last insured, they will receive benefits until the occurrence of one of the following: death, retirement (at which point benefits continue to be paid as retirement benefits), or termination of the disability (*i.e.* the person experiences medical improvement and engages in substantial gainful activity). See 42 U.S.C. § 423 (establishing eligibility requirements for DIB and setting forth rules governing duration of benefit payments). As such, if Plaintiff became disabled prior to December 31, 2008 (i.e. while she eligible for DIB coverage) and if she continued to be disabled thereafter, she would receive significant payments from the Social Security Administration.

In the alternative, unfortunately, if Plaintiff did not become disabled until after the date last insured, she is not entitled to an award of disability insurance benefits. See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir.1989).

For the reasons outlined above, this Court finds that substantial evidence supports the Commissioner's conclusion that Plaintiff did not become disabled prior to the date last insured.

---

[5]The determination of the "date last insured," which is not challenged in this case, is based upon the claimant's work history and a ratio of "quarters of coverage" to total quarters. See 42 U.S.C. § 423(c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.130–404.133.

This Court obviously feels sympathy for anyone who suffers from chronic pain (whether it is disabling or not). However, this Court is not invested with the authority to review Plaintiff's eligibility for benefits *de novo* or to substitute its own notions of fairness and sympathy for the requirements of the law. The co-equal elected branches of the federal government have established the parameters for determining benefit eligibility and defined the scope of the judiciary's role in reviewing those determinations.

The following observation from a Second Circuit Court of Appeals judge is apt:

> Denying statutory benefits to people in need of assistance is always an unpleasant task. The temptation to blur the distinction between individual need and statutory eligibility is strong; but our authority as judges often fails to match our sympathy for our fellow human beings. Absent [legal] transgressions, we have no more power to disregard the substantive and procedural eligibility limitations built into legislative benefit schemes than we have to change the nature and scope of the benefits themselves. It should not be otherwise. By in effect trying cases de novo at the district and even the court of appeals level ... we reduce the entire administrative process to a mere rehearsal for the actual determination, thereby ensuring that we will be seeing an ever-increasing number of these cases in the courts in the years to come.

Singletary v. Sec'y of Health & Human Services, 623 F.2d 217, 220 (2d Cir.1980) (Meskill, J., dissenting). Thus, the significant sympathy this Court has for Plaintiff personally must be set aside and, where the evidence is sufficient to require upholding the Commissioner, as it is here, the law must be applied without passion or prejudice and the Commissioner's decision must be sustained.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. It is clear that the ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the non-examining consultant, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering the decision that Plaintiff was not disabled with respect to the relevant time period. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated: January 25, 2013

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 25, 2013

_____
Victor E. Bianchini
United States Magistrate Judge